154

[809 NYS2d 59]

In the Matter of GLENN J. CALDWELL, an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, February 16, 2006

**APPEARANCES OF COUNSEL**

*Thomas J. Cahill, Chief Counsel, Departmental Disciplinary Committee* (*La Trisha A. Wilson* of counsel), for petitioner.

*Glen J. Caldwell*, respondent pro se.

## OPINION OF THE COURT

Per Curiam.

Respondent Glenn J. Caldwell was admitted to the practice of law in the State of New York by the First Judicial Department on February 10, 1975. At all times relevant to these proceedings, respondent maintained an office for the practice of law within the First Judicial Department.

In June 2003, the Departmental Disciplinary Committee (Committee) served a notice and statement of charges upon respondent alleging multiple violations of the Code of Professional Responsibility. Insofar as relevant, counts eight through twelve alleged that respondent engaged in personal misconduct by devising a scheme to avoid parking summonses for his own vehicles, and in deliberately failing to pay 167 summonses issued over a two-year period. Subsequently, respondent moved to dismiss the charges, which was denied.

In December 2003, a hearing on the charges was held before a referee. The hearing evidence established that from 1991 to 1995, respondent was an Administrative Law Judge (ALJ) for the Parking Violations Bureau (PVB) of the New York City Department of Finance, where his responsibilities included adjudicating summonses issued for illegal parking. Respondent was issued an identification card as an ALJ, but he failed to surrender it when he left the employ of the PVB in 1996. In 1997, respondent ordered vanity license plates for two family cars, intentionally requesting a combination of letters and numbers that he knew would provide him with a technical defense to any summons issued to those cars. Between June 1997 and May 1999, respondent amassed a total of 167 parking tickets and paid none of them.

Additional evidence was introduced showing that on several occasions respondent placed his expired ALJ identification card on the dashboard, ostensibly to discourage a traffic agent from issuing a summons to the vehicle. In other instances, respondent left notes, papers and other objects on the dashboard in a manner that obscured the code printed on the registration sticker which indicated that the car had vanity plates. The referee concluded that respondent's purpose was to prevent the PVB from matching the license plate number to the type of plate issued, thereby preventing proper identification of the vehicle. Much of the evidence supporting these charges came from the supervising ALJ of the PVB, William Evers, who had taken photos of respondent's parked vehicles after becoming suspicious of respondent's activities.

By 1999, respondent had incurred approximately $12,000 in unpaid parking summonses, not including late fees that could never be assessed because of respondent's evasive techniques. In November 1999, respondent settled with the PVB by paying $8,225, the face amount of all summonses less than two years old. He paid no interest or late fees, and nothing on the older tickets.

Respondent admitted that he obtained the vanity plates for the purpose of tricking the ticketing agents, but came to realize that it was an "error in judgment." However, he denied having any intent to obscure the registration sticker, instead shifting the blame to his occasional driver, who died in 2002. The referee rejected respondent's argument that the Committee's delay in investigating the driver's alleged involvement prejudiced him since the evidence showed that respondent's chicanery occurred on instances when the driver was not present and because the doctrine of laches was extremely limited in disciplinary proceedings.

The referee sustained counts eight and nine, finding that respondent's conduct of placing his ALJ identification card on the dashboard and obscuring the registration sticker violated both Code of Professional Responsibility DR 1-102 (a) (4) (conduct involving dishonesty, fraud, deceit, or misrepresentation) and (5) (conduct prejudicial to the administration of justice) (22 NYCRR 1200.3 [a] [4], [5]). Count ten was also sustained on the ground that respondent's intentional failure to pay parking summonses from June 1997 to September 1999 constituted conduct prejudicial to the administration of justice (DR 1-102 [a] [5]). Count eleven, charging dishonest conduct in lying during his deposition about losing his ALJ identification card (DR 1-102 [a] [4]), was not sustained by the referee, who found that respondent had corrected his testimony later in the deposition. Finally, the referee sustained count twelve, finding that on the basis of the charges already sustained, respondent engaged in conduct that adversely reflected on his fitness as a lawyer in violation of DR 1-102 (a) (7).

Regarding mitigation, the referee considered respondent's unblemished disciplinary record and stated remorse, his occasional service to the community and the testimony of three character witnesses. Although respondent testified as to certain psychological conditions, the referee found no persuasive connection between said condition and the misconduct at issue. Citing respondent's two-year period of "chicanery and contempt

for the law'' and his failure to appreciate the gravity of his misconduct, the referee agreed with Committee staff that the appropriate recommendation was a two-year suspension.

A Hearing Panel was convened and heard oral argument on the referee's recommendations. The Committee sought to confirm the referee's report in all respects, including the sanction of a two-year suspension, while respondent urged a lesser sanction of admonition or censure. In a January 19, 2005 report, the Panel recommended confirming the referee's determination to sustain counts eight, nine, ten and twelve, but disagreed with the referee's recommended sanction of a two-year suspension. It found that respondent's behavior, lack of appreciation of the gravity of his conduct and his characterization of same as an ''error in judgment,'' warranted the more severe sanction of a three-year suspension. The Panel was especially disturbed by respondent's continued suggestion that notwithstanding his deceitful acts, his throwing away of the summonses was ''harmless'' since they were technically defective anyway.

The Committee now moves to confirm the findings of fact and conclusions of law of the Hearing Panel, sustaining four charges of misconduct and recommending a three-year suspension. In opposition, respondent makes several arguments for dismissal and, alternatively, for a lesser sanction. He first argues that the referee placed undue emphasis on his retention of his ALJ identification card, especially considering he was never asked to return it and was never charged with misconduct for retaining it. He further argues that the credibility of the supervising ALJ was suspect and should not be relied on to establish his misuse of the identification card. Finally, he repeats his allegation that the Committee was guilty of laches in delaying the formal commencement of charges and in not obtaining a statement from respondent's driver prior to his death in 2002.

The Hearing Panel's report should be confirmed in all respects. Counts eight, nine, ten and twelve were all properly sustained as the hearing evidence clearly established respondent's guilt of perpetrating a dishonest scheme to defraud the City out of parking fines. That respondent, a former ALJ, would utilize his expired identification card and his knowledge of the inner workings of the PVB adjudicatory process for his own personal gain, is simply appalling. Moreover, his statements at deposition and at the referee's hearing to the effect that he was technically not obligated to pay the summonses because they were defective are most revealing. They are demonstrative of

respondent's apparent belief that his criminal or fraudulent design is irrelevant and forgivable where a technical defense exists to avoid liability. Respondent is mistaken, and his reliance on technicalities do not take way from the fact that he deliberately attempted to cheat the City out of money that it was rightfully owed. This was not an instance of a mere "error of judgment," but rather persistent misconduct by a former judicial officer. In light of respondent's continued inability to appreciate the seriousness of his misconduct, we agree with the Hearing Panel that a three-year suspension is the appropriate sanction under the circumstances (*see Matter of Holtz*, 239 AD2d 24, 25-26 [1998]; *Matter of Rosen*, 88 AD2d 125, 126-127 [1982]).

Respondent's arguments in opposition are not substantial. His claim that the referee and Hearing Panel place undue emphasis on his retention of his ALJ identification card is incorrect. As their reports make plain, the referee and Panel sustained the charges not because of respondent's possession of the card, but rather his use of it in a dishonest scheme to avoid parking fines. Respondent's reliance on the doctrine of laches, which is extremely limited in disciplinary proceedings (*Matter of Dondi*, 63 NY2d 331, 339 [1984]; *Matter of O'Hara*, 63 AD2d 500, 503 [1978]), is also misplaced. His claim of prejudice resulting from the Committee's delay in bringing formal charges is speculative, not to mention self-serving, since there is no indication that respondent's driver would have accepted blame for the misconduct. In any event, as noted, the evidence showed that the tricks involving the ALJ card and obscuring the registration occurred at times when the driver was not present.

Accordingly, the Committee's petition to confirm the findings of fact and conclusions of law of the Hearing Panel and its recommended sanction of a three-year suspension should be granted, and respondent should be suspended from the practice of law for a period of three years.

Saxe, J.P., Nardelli, Williams, Gonzalez and Catterson, JJ., concur.

Respondent suspended from the practice of law in the State of New York for a period of three years, effective March 20, 2006.